[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14753
_____

D.C. Docket No. 5:11-cv-00373-RS-CJK


TERRI D. FRANKLIN,
MIRANDA L. HARTZELL,
STACEY RUDD,

Plaintiffs - Appellants,

versus

DAVID TATUM, et al.,

Defendants,

GLEN KIMBREL,
as Sheriff of Calhoun County, Florida,
NICK FINCH,
as Sheriff of Liberty County, Florida,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(September 21, 2015)

Before WILSON and MARTIN, Circuit Judges, and HODGES,[*] District Judge.

MARTIN, Circuit Judge:

This direct appeal calls upon us to address the unspeakable acts of a state officer who used his authority to prey on female inmates. Stacey Rudd, Terri Franklin, and Miranda Hartzell, three prisoners held in the Liberty County, Florida jail, alleged they were sexually abused by William Strawn, a Calhoun County, Florida transportation officer. The women brought claims against Harrell Revell, the Sheriff of Liberty County, and David Tatum, the Sheriff of Calhoun County,[1] under 42 U.S.C. § 1983, alleging that these sheriffs were deliberately indifferent to Mr. Strawn's behavior. The District Court granted summary judgment in favor of the sheriffs.[2]

---

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

[1] During the time Mr. Strawn abused the plaintiffs, David Tatum was the Sheriff of Calhoun County and Harrell Revell was the Sheriff of Liberty County. Because the suit was brought against these sheriffs in their official capacities, new sheriffs have been substituted as defendants once they assumed office. For this reason, the caption on this appeal now lists Glen Kimbrel as the Sheriff of Calhoun County and Nick Finch as the Sheriff of Liberty County. However, we refer to Sheriff Tatum and Sheriff Revell because they held office during the events that are the subject of this case.

[2] The plaintiffs also brought state law claims, but they were either voluntarily dismissed, or abandoned on appeal.

2

Mr. Strawn's sexual abuse of the female inmates entrusted to his care is quite troubling. Yet he is no longer a party to this suit—only the sheriffs are.[3] Our precedent makes clear that supervisory liability under § 1983 requires sheriffs to possess a high degree of knowledge about the risk that materialized. On the disturbing facts before us, the District Court incorrectly concluded that plaintiffs' § 1983 claims against the Liberty County Sheriff cannot meet this high standard. The court's dismissal of plaintiffs' § 1983 claims against the Calhoun County Sheriff is slightly different based on the timing of a direct warning given to that sheriff. In light of that warning, the District Court should not have granted summary judgment on Ms. Rudd's and Ms. Franklin's claims against him, but correctly dismissed Ms. Hartzell's claim.

## BACKGROUND

In 2005 Calhoun County began housing its female inmates in Liberty County, because Calhoun County did not have the proper facilities.[4] During the time of Mr. Strawn's assaults there was not a written agreement governing the terms of the inmate housing exchange, but under a verbal agreement Calhoun County retained the ability to remove or transfer their female inmates at any time.

---

[3] Mr. Strawn pleaded no contest to a misdemeanor for one encounter where he assaulted two of the plaintiffs. He served no jail time for his criminal behavior.

[4] Because the District Court granted summary judgment, we accept the plaintiffs' version of the facts as true and make all reasonable inferences in their favor. Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013).

The Calhoun County Sheriff hired Mr. Strawn in 2001.  In March 2004 Mr. Strawn let two women drive his squad car on a joyride.  As a result, he was investigated and punished by losing seniority, being placed on probation, and forfeiting vacation time.  In April 2004, the Calhoun County Sheriff's Office made Mr. Strawn a transport officer.  His job included transporting Calhoun County's female inmates from Liberty County jail to various doctor's appointments, court dates, and other jail facilities.

The daily operations at the Liberty County jail were managed by jail administrator Fannie Partridge, who would occasionally meet with Liberty County Sheriff Revell to discuss the jail.[5]  Ms. Partridge permitted Mr. Strawn to use her private office to interview inmates alone for up to forty minutes at a time.  One former inmate, Dana Fritz, testified that during one of those office interviews Mr. Strawn pressured her to perform sexual favors in exchange for preferential treatment.  Other inmates later testified that Mr. Strawn had asked them to open their clothing and expose their breasts, or waited for them to exit the shower while naked.  Mr. Strawn was "flirty" and mingled with the female inmates at Liberty

---

[5] The District Court considered Ms. Partridge, as Sheriff Revell's representative for the Liberty County jail, subject to supervisory liability for purposes of summary judgment.  Because Ms. Partridge was the Liberty County Sheriff's Office representative in charge of operations at the jail, and because plaintiffs brought this suit against the sheriff in his official capacity, we do the same.  See Goodman, 718 F.3d at 1335 ("[T]o establish liability against [a Sheriff] in his official capacity, Goodman had to prove that he suffered a constitutional deprivation as the result of . . . an action taken or policy made by an official responsible for making final policy in that area of the Sheriff's Department's business . . . ." (alteration adopted) (quotation omitted)).

County jail.  Importantly, in December 2007, Ms. Fritz (the inmate who had been pressured to perform sexual favors for Mr. Strawn) told Calhoun County Sheriff Tatum that he "need[ed] to get Billy Strawn in check," and specifically warned that Mr. Strawn was "making sexual advances."

Plaintiffs were all Calhoun County inmates housed at Liberty County jail during 2007 and 2008.  Mr. Strawn had non-consensual, forcible sex with Ms. Hartzell on four different occasions in 2007, sometimes while she was handcuffed. After the first incident she told Maple Spears, a corrections officer at Liberty County jail, that she was "uncomfortable going anywhere with [Strawn] or being around him."  Also after the first incident, Ms. Hartzell told Ms. Partridge about Mr. Strawn having sex with her.  After the conversation, Ms. Partridge stopped Ms. Hartzell from riding with Mr. Strawn "for a while," but at least three more assaults occurred.  Mr. Strawn's final sexual assault on Ms. Hartzell occurred on November 15, 2007.

Mr. Strawn transported Ms. Rudd and Ms. Franklin to clean-up duty late in the evening of April 5, 2008.  Sheriff Tatum gave Mr. Strawn permission to take "two inmates" to the event.  During that outing Strawn had sex with both women on the hood of his patrol car after making threats about what would happen if they refused.  After the incident Ms. Rudd spoke with Ms. Partridge and another correctional officer at Liberty County jail about being forced to have sex with Mr.

Strawn, and at one point Ms. Partridge told her to hide or stand in the back of the dorm so that Mr. Strawn would not check her out of the jail.

On April 24, 2008, Mr. Strawn was videotaped attempting to bribe former inmate Lisa Vaughn to have sex with him in exchange for giving preferential treatment to her inmate husband. Calhoun County fired Mr. Strawn. The Florida Department of Law Enforcement launched an investigation into the abuse, which uncovered a number of photos of naked inmates on Mr. Strawn's phone, and testimony by other inmates that he had threatened them and asked to see them naked. Ms. Vaughn, the former inmate, testified that every time an inmate said something about the abuse by Mr. Strawn, the Liberty County jailers "would punish [them] for it" by not permitting them to go out in the recreational yard.

Plaintiffs brought § 1983 deliberate indifference claims against both counties' sheriffs in their official capacities. After discovery, a Magistrate Judge recommended granting the sheriffs' motions for summary judgment on all § 1983 claims. The District Court adopted the R&R, granting summary judgment in favor of the two sheriffs on the § 1983 claims. Plaintiffs timely appealed.

## ANALYSIS

Plaintiffs' appeal turns on whether the specific facts satisfy our supervisory liability standards under § 1983.[6]  "Supervisory liability under § 1983 occurs . . . when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation."  Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (quotation omitted).  A causal connection may be established when:

> 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so;
>
> 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or
>
> 3) [there are] facts support[ing] an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

Id. (quotation omitted).  Deliberate indifference exists if an official "(1) [has] subjective knowledge of a risk of serious harm; [and] (2) disregard[s] . . . that risk; (3) by conduct that is more than gross negligence."  Townsend v. Jefferson Cty., 601 F.3d 1152, 1158 (11th Cir. 2010) (alteration adopted) (quotation omitted).  We

---

[6] We review de novo the District Court's grant of summary judgment.  Goodman, 718 F.3d at 1331.  To be eligible for summary judgment, the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510 (1986).  "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment," Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004), and "unsupported speculation" is not enough to create a genuine issue of material fact, Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) (quotation omitted).

now turn to plaintiffs' claims against each sheriff for his supervisory role in Mr. Strawn's criminal behavior.

A.    Liberty County Sheriff Revell

The District Court should not have dismissed plaintiffs' § 1983 claims against the Liberty County Sheriff for any incidents occurring after Ms. Hartzell informed Ms. Partridge of Mr. Strawn's first sexual assault.  Plaintiffs' claims should have survived summary judgment because a reasonable jury could conclude that Ms. Partridge was deliberately indifferent to the serious risk that the constitutional injuries would occur, and also that she knew that Mr. Strawn would act unlawfully and failed to stop it.  Matthews, 480 F.3d at 1270.

Ms. Hartzell testified that she notified Ms. Partridge after Mr. Strawn's first sexual assault.  The District Court rejected this direct notice because Ms. Hartzell "cannot recall" what she told Ms. Partridge, explaining that "the court will not impute direct knowledge."  But on summary judgment, we must make all reasonable inferences in favor of plaintiffs.  To be sure, Ms. Hartzell's testimony reflected some uncertainty.  Ms. Hartzell explained, "I know I told [Partridge] something to the fact, to do with Billy Strawn about him having sex with me."  But when asked "what specifically you may have said to [Partridge] concerning Billy Strawn," Ms. Hartzell said, "I don't remember what I said."  In another exchange, Ms. Hartzell said "I'm pretty sure I did tell [Partridge] what was going on," but

8

when asked to repeat "exactly the words [she used]," she responded, "I don't remember what I told Ms. Partridge."[7]  At a number of points, Ms. Hartzell said that she did not remember what she told Ms. Partridge.  However, a reasonable jury could conclude from the full transcript that Ms. Hartzell did not remember the specific way she explained the encounter, not that she did not remember whether she reported Mr. Strawn's having sex with her.  The attorney taking Ms. Hartzell's deposition asked repeatedly about the exact words she used in the conversation with Ms. Partridge, and a reasonable jury could conclude that Ms. Hartzell's answers reflecting uncertainty were meant to respond to the attorney's request for a recitation of her exact phrasing.

Given this conversation, Ms. Partridge was on notice of Mr. Strawn's criminal behavior.  After the conversation, Ms. Partridge made a small change by keeping Ms. Hartzell away from Mr. Strawn "for a while."  But she took no investigatory actions, did not increase supervision of Mr. Strawn while he was at the Liberty County jail, and did not notify Sheriff Revell or Sheriff Tatum about Strawn's behavior.  A jury could find this was deliberate indifference.

Also, because Ms. Hartzell informed Ms. Partridge that Mr. Strawn had sex with an inmate, Partridge was on notice that Strawn had acted (and would continue

---

[7] Ms. Hartzell also said, "I'm not sure what I told [Partridge], if it was actually something about him actually putting his hand on me and him having sex with me while I was handcuffed or something like that.  I'm not sure."

to act) unlawfully and failed to take action.  See Fla. Stat. § 951.221(1) (making sexual misconduct with an inmate (including sexual intercourse, see Fla. Stat. § 944.35(3)) a felony of the third degree).  This, too, could support a jury finding of a causal connection between Sheriff Revell's inaction and the plaintiffs' harm.

The District Court's grant of summary judgment on the Liberty County claims must be reversed.

B.    Calhoun County Sheriff Tatum

The District Court correctly dismissed Ms. Hartzell's § 1983 claim as to Calhoun County Sheriff Tatum, but it erred in dismissing Ms. Rudd's and Ms. Franklin's claims.  The same facts apply to all plaintiffs—only the timing of events divides their eligibility for relief.  As explained above, a causal connection between a supervisor's actions and a claimant's harm can be shown if "a supervisor's custom or policy results in deliberate indifference to constitutional rights" or if there are "facts support[ing] an inference that the supervisor . . . knew that subordinates would act unlawfully and failed to stop them from doing so." Mathews, 480 F.3d at 1270.[8]  Ms. Rudd and Ms. Franklin have established a genuine issue of material fact on both points.

---

[8] A third way to show a causal connection is by pointing to a history of widespread abuse. Keith v. Dekalb Cty., Ga., 749 F.3d 1034, 1048 (11th Cir. 2014).  Plaintiffs have pointed to no history of widespread abuse because there is no evidence that Sheriff Tatum was on notice of any continued duration of obvious, flagrant, or rampant abuse.  He knew only from a single warning that Mr. Strawn was misbehaving.  See Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official

10

Sheriff Tatum's lack of policies regarding the housing and transfer of female inmates, along with his custom of not using or enforcing the Calhoun County cross-gender transport policy, could support a finding of deliberate indifference.[9] Liberty County's inmate housing policies were extremely lax, and Sheriff Tatum did not act to supplement those policies to protect his inmates. Calhoun County did not receive any ongoing reports about its inmates, and there was no agreement about how officers from Calhoun County would be able to access their inmates housed at the Liberty County jail. Calhoun County did not train Mr. Strawn about cross-gender transport. Even though Calhoun County had a policy that mileage should be called in at the beginning and end of a cross-gender transport, the county did not effectively log or record the calls. Sheriff Tatum also did not have a policy of monitoring whether the call procedures were enforced. Mr. Strawn admits that he complied with the policy only some of the time.

---

must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." (quotation omitted)).

[9] Plaintiffs claim that the 2004 joyriding incident put Sheriff Tatum on notice of a risk. Even though there was some indication that the joyriding incident was connected to sexual favors, there is no evidence that the sheriff knew about any sexual undertones of that incident. Mr. Strawn's conduct showed poor judgment, but it did not make known a substantial risk that he would sexually assault plaintiffs years later. See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 410, 117 S. Ct. 1382, 1391 (1997) (holding that a sheriff's decision to hire an officer with a prior criminal record was insufficient to support § 1983 municipal liability for an excessive force arrest because the criminal record did not put the sheriff on notice that the specific harm would occur years later).

Most critically, in December 2007, former inmate Dana Fritz notified Sheriff Tatum that he needed to get Mr. Strawn "in check" because he was "making sexual advances" to the inmates. But Sheriff Tatum made no changes to how he approached the inmate transfers and did not investigate the allegation of sexual misconduct. Four months later, he even gave Mr. Strawn permission to take Ms. Rudd and Ms. Franklin out of Liberty County jail to work clean-up duty at an event lasting past 10:00 p.m. Mr. Strawn assaulted both women after this event.

This evidence suggests that Sheriff Tatum was grossly negligent when structuring the inmate housing arrangement with Liberty County. But "[a] claim of deliberate indifference requires proof of more than gross negligence." Townsend, 601 F.3d at 1158. For a period of time, Sheriff Tatum had no notice of the risk posed by Mr. Strawn nor any reason to question the arrangement. But once Ms. Fritz notified Sheriff Tatum about Mr. Strawn's concerning behavior, his failure to intervene could be the basis for a finding of deliberate indifference.[10] See Brown, 520 U.S. at 410, 117 S. Ct. at 1391.

The District Court was not persuaded that Ms. Fritz's warning put the sheriff on notice because:

---

[10] For this reason, the District Court correctly dismissed Ms. Hartzell's § 1983 claim, which was based solely on conduct before Ms. Fritz's warning. Cf. Goodman, 718 F.3d at 1335 (holding that a facially constitutional policy could not support supervisory liability when officer had no notice that violation of policy was widespread, and no evidence that the policy would have actually caused plaintiff's injuries).

the information provided was vague, Fritz did not indicate that Strawn was raping (or even touching) inmates, or committing any crimes at all. Fritz only indicated to Sheriff Tatum that Strawn was making sexual advances towards inmates. The phrase 'sexual advances' does not convey that Strawn was committing illegal acts and certainly does not indicate that Strawn was sexually assaulting inmates.

Perhaps a reasonable jury could agree with the District Court's interpretation of Ms. Fritz's statement. But a reasonable jury could also conclude that her statement communicated much more to Sheriff Tatum.

A supervisor's knowledge may be shown through circumstantial evidence. Farmer v. Brennan, 511 U.S. 825, 842, 114 S. Ct. 1970, 1981 (1994). Ms. Fritz's statement did not specify that Mr. Strawn was having sex with inmates, but a reasonable jury could conclude that Sheriff Tatum was on notice of the risk that he would sexually assault the plaintiffs. A reasonable jury could find that an officer who is "making sexual advances" toward inmates was taking, or threatening to take, actions beyond mere words. From Ms. Fritz's statement, Mr. Strawn's conduct could be escalating, and the sheriff was warned that he needed to take action to "get [Strawn] in check." This is enough for a reasonable jury to conclude that he should have changed the county's lax policies. See Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (holding that absence of a policy can support a finding of deliberate indifference).

The plaintiffs also challenge Sheriff Tatum's failure to investigate or supervise Mr. Strawn. "Where the proper response . . . is obvious to all without

13

training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference . . . ." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 490 (11th Cir. 1997) (quotation omitted). Sexual assault on a prisoner is so beyond the conduct that a reasonable officer would consider acceptable that we know of no requirement that a sheriff train his officers against it. Sheriff Tatum testified that he had no reason to suspect Mr. Strawn, so he took no actions to monitor Strawn's transportation of female inmates. This inaction alone would not support a § 1983 claim.

However, our cases have also explained that a supervisor's reliance on common sense can rise to the level of deliberate indifference if the supervisor is on notice that misconduct is occurring. Sewell, 117 F.3d at 490. And failing to act on that notice supports a finding of deliberate indifference. Cf. West v. Tillman, 496 F.3d 1321, 1330 (11th Cir. 2007) (per curiam) (finding no deliberate indifference where a sheriff changed his policies after receiving notice of misconduct). This record provides a sufficient basis for a jury to find that Sheriff Tatum's behavior shifted from negligent to deliberately indifferent after Ms. Fritz gave him reason to

suspect that Mr. Strawn was breaking the law, not to mention violating the code of conduct required of all Florida officers.[11]

Sheriff Tatum did not make a single change after Ms. Fritz's warning. He did not supervise Mr. Strawn more closely; did not speak with the Liberty County Sheriff about what may have been occurring; and did not ensure that Mr. Strawn was in compliance with the existing Calhoun County jail procedures to protect inmates during cross-gender transfers. Any one of those actions could have prevented Mr. Strawn's assaults on Ms. Rudd and Ms. Franklin. A jury must decide whether Sheriff Tatum's failure to implement policies, enforce existing policies, or investigate the allegations against Mr. Strawn (all after he had a warning that such actions were necessary) combined to cause an obvious and predictable consequence—the sexual assaults against Ms. Rudd and Ms. Franklin. See Brown, 520 U.S. at 409–410, 117 S. Ct. at 1391.

Alternatively, a reasonable jury could conclude that plaintiffs showed a causal connection because Sheriff Tatum was on notice that Mr. Strawn would act

---

[11] Section 4.4 of Florida's Law Enforcement Officer Ethical Standards of Conduct states that:

> Police officers, while on duty, shall not commit any act which, as defined under Florida law, constitutes sexual harassment, including but not limited to, making unwelcome sexual advances, requesting sexual favors, engaging in sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature.

Officer Requirements, Florida Dept. of Law Enforcement, https://www.fdle.state.fl.us.

15

unlawfully and failed to stop him from doing so.[12]  Mathews, 480 F.3d at 1270.

Mr. Strawn committed the crime of sexual misconduct the minute he had sex with

an inmate.  See Fla. Stat. § 951.221 (making sexual misconduct between detention

facility employees and inmates a third-degree felony); id. § 944.35 (defining

"sexual misconduct").  It is reasonable for a jury to conclude that an officer who is

"making sexual advances" toward female inmates would escalate to engaging in

sexual misconduct, putting Sheriff Tatum on notice that Mr. Strawn would act

unlawfully.

## CONCLUSION

---

[12] By failing to investigate, Sheriff Tatum could himself have been acting in violation of
Florida law:

> 3(d) Each employee who witnesses, or has reasonable cause to suspect, that an
> inmate or an offender under the supervision of the department in the community
> has been unlawfully abused or is the subject of sexual misconduct pursuant to this
> subsection shall immediately prepare, date, and sign an independent report
> specifically describing the nature of the force used or the nature of the sexual
> misconduct, the location and time of the incident, and the persons involved. The
> report shall be delivered to the inspector general of the department with a copy to
> be delivered to the warden of the institution or the regional administrator. The
> inspector general shall immediately conduct an appropriate investigation, and, if
> probable cause is determined that a violation of this subsection has occurred, the
> respective state attorney in the circuit in which the incident occurred shall be
> notified.

> (4)(a) Any employee required to report pursuant to this section who knowingly or
> willfully fails to do so, or who knowingly or willfully prevents another person
> from doing so, commits a misdemeanor of the first degree, punishable as provided
> in s. 775.082 or s. 775.083.

Fla. Stat. § 944.35.

No person should have to endure the type of abuse alleged in this case. The fact that these women were in the custody of the State when this jailer used his position of authority to abuse them is deeply disturbing. There are surely many steps that could have been taken by many people so as to avoid what happened to these women. However, culpability is not the same as liability, especially under this Court's supervisory liability precedent. The District Court's grant of summary judgment is affirmed in favor of Calhoun County Sheriff Tatum as to Ms. Hartzell's § 1983 claim. But because a jury could find a causal connection between the Liberty County Sheriff's inaction and all three plaintiffs' injuries, as well as the Calhoun County Sheriff's actions and the constitutional injuries suffered by Ms. Rudd and Ms. Franklin, we reverse the District Court's grant of summary judgment on those plaintiffs' § 1983 claims and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART AND REVERSED IN PART.**

HODGES, District Judge, concurring in judgment only.